IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

IPXPHARMA, LLC,

    Plaintiff,

v.

MILLENNIUM
PHARMACEUTICALS, INC.,

    Defendant.

Case No. 3:14-cv-01545
Judge Trauger
Magistrate Griffin
**JURY DEMANDED**

# IPXPHARMA'S MEMORANDUM IN SUR-REPLY TO MILLENNIUM'S MOTION TO DISMISS

# TABLE OF CONTENTS

|  | Page |
|---|---|
| **TABLE OF AUTHORITIES** ............................................................................... ii | |
| **INTRODUCTION** ..............................................................................................1 | |
| **FACTUAL BACKGROUND** ...............................................................................1 | |
| **DISCUSSION** ....................................................................................................2 | |
| I. THE LETTER AGREEMENT CONSTITUTES A VALID ASSIGNMENT UNDER ILLINOIS LAW. ..................................................................................3 | |
| II. THE LETTER AGREEMENT CONSTITUTES A VALID ASSIGNMENT UNDER FEDERAL CIRCUIT LAW. ...........................................................................5 | |
| **CONCLUSION** .................................................................................................8 | |

# **TABLE OF AUTHORITIES**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010)...............6

*Am. Coll. of Surgeons v. Lumbermens Mut. Cas. Co.*, 491 N.E.2d 1179 (Ill. App. 1986)................................................................................................................4

*Brandon Apparel Group v. Kirkland & Ellis*, 887 N.E.2d 748 (Ill. App. 2008).......3

*Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 898 N.E.2d 216 (Ill. App. 2008) ................................................................................................................4, 5

*Dr. Charles W. Smith III, Ltd. v. Conn. Gen. Life Ins. Co.*, 462 N.E.2d 604 (Ill. App. 1984)................................................................................................................3

*Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568 (Fed. Cir. 1991)...................8, 9

*Grunloh v. Effingham Equity, Inc.*, 528 N.E.2d 1031 (Ill. App. 1988) .....................3

*In re Estate of Davis*, 184 S.W.3d 231 (Tenn. Ct. App. 2004).................................3

*In re Estate of Maslowski*, 561 N.E.2d 1183 (Ill. App. 1990) .................................5

*Northwest Diversified, Inc. v. Desai*, 818 N.E.2d 753 (2004)..............................4, 5

*Savage v. Gregg*, 37 N.E. 312 (Ill. 1894) ................................................................3

*Sims v. Mack Trucks, Inc.*, 407 F. Supp. 742 (E.D. Penn. 1976)..............................7

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000)...............................2

*Stoller v. Exchange National Bank of Chicago*, 557 N.E.2d 438 (Ill. App. 1990)....4

*Univ. Patents, Inc. v. Kligman*, 762 F. Supp. 1212 (E.D. Pa. 1991) ........................6

**Statutes**

35 U.S.C. § 261 ......................................................................................................2, 6

**Treatises**

6A C.J.S. Assignments § 49, at 664 (1975)...............................................................3

# INTRODUCTION

Millennium's reply brief raises for the first time the argument that IPXpharma lacks standing because the assignment from the Board of Trustees of the University of Illinois ("Illinois") back to the inventors did not specifically convey the right to pursue past damages. The evidence, however, demonstrates that Illinois assigned the invention giving rise to Patent No. 6,171,786 (the "'786 patent") on February 2, 1999, and the March 2014 assignment merely confirms the prior agreement. This means that the inventors were owners of the '786 patent at the time Millennium's infringement began, and thus had the right to, and did in fact, transfer the right to sue for that infringement to IPXpharma in April 2014. As a result, IPXpharma has standing to sue Millennium for its prior acts of infringement.

# FACTUAL BACKGROUND

On February 2, 1999, Illinois stated that the invention titled "Method for Preventing Multidrug Resistance in Cancer Cells" "is being returned to the inventors who will, as of the date of this letter, assume responsibility for all patent applications, prosecution and maintenance and their associated costs." (Declaration of Jill Tarzian Sorensen ("Sorensen Decl."), Ex. 1, ¶ 4, Ex. A.) The letter agreement is signed by Illinois and was delivered to the inventors, Igor Roninson and Alexander Shtil. (Sorensen Decl. ¶ 4, Ex. A.); (Affidavit of Dr. Igor Roninson

("Roninson Aff."), Ex. 2, ¶ 4, Ex. A.) In exchange for the assignment of the invention, Dr. Roninson agreed to, and did in fact, pay all prosecution expenses and maintenance fees associated with the invention from February 2, 1999 forward. (Roninson Aff., ¶¶ 3, 5.) The invention described in the February 2, 1999 letter agreement (the "Letter Agreement") eventually resulted in the issuance of the '786 patent. (Sorensen Decl. ¶ 3.)

In March 2014, Illinois confirmed its prior assignment of the invention to the inventors in the Letter Agreement. (Roninson Aff., ¶ 6.) The assignment was entered into to provide a more formal confirmation of the Letter Agreement, in order to facilitate the transaction between the inventors and IPXpharma. (Roninson Aff., ¶ 6.)

## DISCUSSION

"[P]atents shall have the attributes of personal property . . . . Applications for patent, patents or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C. § 261. The ownership and transfer of patent rights is typically a question exclusively for state courts, but the question of whether the contractual language effects a present assignment of patents rights or an agreement to assign rights in the future is resolved by Federal Circuit law. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000). The Letter Agreement was

sufficient to assign the '786 patent to the inventors under both Illinois and Federal Circuit law.

I. **THE LETTER AGREEMENT CONSTITUTES A VALID ASSIGNMENT UNDER ILLINOIS LAW.**

Illinois law governs the interpretation of the Letter Agreement. *In re Estate of Davis*, 184 S.W.3d 231, 234 (Tenn. Ct. App. 2004) (noting that "Absent a contractual choice of law provision, Tennessee courts apply the *lex loci* rule to contract causes of action. Accordingly, the substantive law of the state in which the contract was executed governs disputes arising from the contract.") (internal citations omitted). Under Illinois law, "'Any language, however informal or poorly expressed, if it shows the intention of the owner of the property or chose in action to transfer it, clearly and unconditionally, and sufficiently identifies the subject matter, will be sufficient to vest the property therein in the assignee.'" *Grunloh v. Effingham Equity, Inc.*, 528 N.E.2d 1031, 1038 (Ill. App. 1988) (quoting 6A C.J.S. Assignments § 49, at 664 (1975)); *see also Dr. Charles W. Smith III, Ltd. v. Conn. Gen. Life Ins. Co.*, 462 N.E.2d 604, 606 (Ill. App. 1984) (quoting *Savage v. Gregg*, 37 N.E. 312 (Ill. 1894)) (noting that "'It is well established, that to constitute a valid assignment, no particular form of words is necessary. Any words which show an intention of transferring the chose in action to the assignee for valuable consideration are sufficient to create an assignment.'"); *Brandon Apparel Group v. Kirkland & Ellis,* 887 N.E.2d 748, 283 (Ill. App. 2008) (quoting *Stoller v.*

3

*Exchange National Bank of Chicago,* 557 N.E.2d 438 (Ill. App. 1990)) ("'Generally, no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment.'"). In Illinois, "A 'writing' . . . may be made up of several documents, which may consist of various forms such as notes, papers, letters and telegrams, so long as, taken together, they contain on their face, or by reference to other writings, the names of the parties, an identification of the subject matter of the contract, and the terms and conditions of the contract." *Am. Coll. of Surgeons v. Lumbermens Mut. Cas. Co.*, 491 N.E.2d 1179, 1192 (Ill. App. 1986). Finally, "An assignment operates to transfer to the assignee all the right, title or interest of assignor in the thing assigned . . . ." *Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 229-30 (Ill. App. 2008) (quoting *Northwest Diversified, Inc. v. Desai,* 818 N.E.2d 753 (2004)).

The language in the Letter Agreement easily fulfills the requirements of Illinois law. The statement that "The invention is being returned to the inventors," demonstrates the intent of Illinois to vest ownership of the invention in the inventors. (Sorensen Decl. ¶ 4, Ex. A.) The Letter Agreement also clearly spells out what is being transferred: "Invention Title: 'Method for Preventing Multidrug Resistance in Cancer Cells'" which eventually resulted in the issuance of the '786

4

patent. (*Id.*) The Letter Agreement is also sufficient to constitute a "writing," under Illinois law because it contains the names of the parties—the inventors are listed recipients of the letter—the subject matter of the contract, and the terms of the agreement. (*Id.*)

In exchange for having the invention returned, the inventors supplied "valuable consideration" by agreeing to "assume responsibility for all patent applications, prosecution and maintenance and their associated costs." (*Id.*); *See In re Estate of Maslowski*, 561 N.E.2d 1183, 1187 (Ill. App. 1990) (holding that release of obligation to pay life insurance premiums constituted sufficient consideration for assignment of life insurance policy). Therefore, there can be little doubt that, under Illinois law, the Letter Agreement constitutes an "'assignment [that] operates to transfer to the [the inventors] all the right, title or interest of [Illinois] in the [invention],'" and ultimately the '786 patent. *Cincinnati Ins. Co.*, 898 N.E.2d at 229-30 (quoting *Northwest Diversified, Inc.,* 818 N.E.2d 753).

## II. THE LETTER AGREEMENT CONSTITUTES A VALID ASSIGNMENT UNDER FEDERAL CIRCUIT LAW.

A valid assignment under Federal Circuit law requires "a written instrument documenting the transfer of proprietary rights in the patent." *Speedplay, Inc.*, 211 F.3d at 1250. Additionally, in order to convey standing, the assignment must effect a present assignment of patent rights, as opposed to an agreement to assign rights in the future. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed.

Cir. 2010) (citing *Speedplay*, 211 F.3d at 1253). No particular form is required for an assignment to be valid; "'it is the substance of what was granted,'" that determines the rights in the patent. *Speedplay*, 211 F.3d at 1250. In order to be valid, the writing needs only "show a clear and unmistakable intent to transfer ownership, and must be executed by the patentee or by the patentee's assigns or legal representatives." *Univ. Patents, Inc. v. Kligman*, 762 F. Supp. 1212, 1219 (E.D. Pa. 1991).

Here, the Letter Agreement serves as a "written instrument documenting the transfer of proprietary rights" in the invention to the inventors from Illinois. The letter sets forth that the invention "is being returned to the inventors." (Sorensen Decl. ¶ 4, Ex. A.) There are no qualifications or carve-outs reserving any rights in the invention to Illinois, and there can be little doubt that Illinois intended to transfer all of its rights in the invention to the inventors. Additionally, the Letter Agreement is executed by Illinois—the patentee's assignee. As a result the Letter Agreement complies with 35 U.S.C. § 261's writing requirement.

Moreover, the "is being returned" language demonstrates that this is a present assignment, not an agreement to assign in the future. "Is being" clearly implies present action. This interpretation of "is being" becomes even more obvious when it is read in the context of the entire Letter Agreement. The Letter Agreement states, "The invention is being returned to the inventors who will, as of

6

{B1841363}
Case 3:14-cv-01545 Document 50-1 Filed 10/01/14 Page 9 of 14 PageID #: 1009

the date of this letter, assume responsibility for all patent applications, prosecution and maintenance and their associated costs." (Sorensen Decl. ¶ 4, Ex. A.) The entire sentence surrounding "is being," speaks to immediate action. Nothing in the Letter Agreement can be read to imply that anything further needs to be done to convey title to the invention.

Finally, the fact that Illinois and the inventors signed a more formal assignment confirmation in March 2014 does not change the fact that title to the invention passed to the inventors in February 1999. The situation here is analogous to *Sims v. Mack Trucks, Inc.*, 407 F. Supp. 742 (E.D. Penn. 1976). In that case, Sims entered into an agreement stating that "seller hereby sells and buyer hereby purchases," the patent at issue. *Id.* at 744. A subsequent clause in the agreement, however, noted that the seller would execute and deliver an assignment of the patent to the purchaser within one month of the agreement. *Id.* That assignment was to be placed in escrow until the purchaser paid the full purchase price. *Id.* Ultimately, the assignment was never executed and the purchase price never paid. *Id.* In spite of this, the court concluded that the agreement was sufficient to convey legal title in the purchaser as of the date of the agreement. *Id.* The court determined that the assignment clause was a "mere formality designed to guarantee payment" and that the plain language that "the Seller hereby sells and the Buyer hereby buys," conveyed legal title to the buyer. *Id.*

7

Likewise, here, the plain language of the Letter Agreement proves that title to the invention passed to the inventors on February 2, 1999. The fact that Illinois later executed a formal assignment does not change the plain language of the Letter Agreement. *See Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) (noting that "if Cadotte granted MRI rights in inventions made during his employ, and if the subject matter of the '344 patent was invented by Cadotte during his employ with MRI, then Cadotte had nothing to give to FilmTec and his purported assignment to FilmTec is a nullity"). Illinois and the inventors entered into the March 2014 assignment as part of a belt-and-suspenders approach, in case the February 1999 assignment was found to be invalid. In other words, as in *Sims*, the March 2014 assignment was a "mere formality" designed to facilitate the transaction between the inventors and IPXpharma. (Roninson Aff. At ¶ 6.) In fact, the Letter Agreement is even less ambiguous than the agreement in *Sims* because, unlike *Sims*, nothing in the Letter Agreement even hints at the need for any future action. As a result, the March 2014 assignment did nothing to change the fact that the Letter Agreement assigned the invention back to the inventors in 1999.

## CONCLUSION

As demonstrated above, legal title to the invention passed to the inventors on February 2, 1999. Thus, the inventors obtained legal title to—and standing to sue for infringement of—the '786 patent on the date it issued. *See Filmtec Corp.*, 939

8

{B1841363}
Case 3:14-cv-01545   Document 50-1   Filed 10/01/14   Page 11 of 14 PageID #: 1011

F.2d 1568, 1572 (Fed. Cir. 1991) (noting that "[I]t is settled law that between the time of an invention and the issuance of a patent, rights in an invention may be assigned and legal title to the ensuing patent will pass to the assignee upon grant of the patent."). As a result, the inventors' assignment to IPXpharma in April 2014 was sufficient to provide IPXpharma with standing to sue for any and all past infringement that may have occurred during the life of the '786 patent.

DATED: October 1, 2014

                              Respectfully submitted,

                              *s/ Clarence J. Gideon Jr.*
                              Clarence J. Gideon, Jr.
                              GIDEON, COOPER & ESSARY PLC
                              315 Deaderick Street, Suite 1100
                              Nashville, Tennessee 37238
                              *cj@gideoncooper.com*

                              Michael A. Florie (admitted *pro hac vice*)
                              Jay M. Ezelle (admitted *pro hac vice*)
                              Cole R. Gresham (admitted *pro hac vice*)
                              STARNES DAVIS FLORIE LLP
                              100 Brookwood Place, 7th Floor
                              P. O. Box 598512
                              Birmingham, AL 35259-8512
                              *jme@starneslaw.com*
                              *crg@starneslaw.com*

                              **Attorneys for Plaintiff**
                              **IPXpharma, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 1st day of October, 2014, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing, to the following attorneys of record:

Jessalyn H. Zeigler
BASS BERRY & SIMS, PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
(615) 742-6200
JZeigler@bassberry.com

William F. Lee
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts
(617) 526-6000
william.lee@wilmerhale.com

Robert M. Galvin
Leizel A. Ching
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
(650) 858-6000
robert.galvin@wilmerhale.com
leizel.ching@wilmerhale.com

s/ Clarence J. Gideon, Jr.